**LETICA CORPORATION, Plaintiff,**

v.

**SWEETHEART CUP COMPANY, Defendant.**

No. 91–74639.

United States District Court, E.D. Michigan, S.D.

Nov. 9, 1992.

Thomas N. Young, Krass & Young, Troy, Mich., for plaintiff.

Michael E. Husmann, John J. McHugh, William E. Snyder, Michael Best & Friedrich, Milwaukee, Wis., Donald S. Young, Michael P. Cooney, Dykema Gossett, Detroit, Mich., for defendant.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY DECLARATORY JUDGMENT

GADOLA, District Judge.

On February 26, 1992, defendant Sweetheart Cup Company filed an answer and counterclaims to plaintiff's first amended complaint of February 3, 1992. On June 2, 1992, plaintiff Letica Corporation filed a motion for summary declaratory judgment on the issue of whether plaintiff's Maui cup design infringes upon defendant's Preference trade dress design. Plaintiff's motion was withdrawn on June 29, 1992 and re-

filed on July 2, 1992. Defendant filed responses to plaintiff's initial and renewed motions on June 16, 1992 and July 17, 1992, respectively.

## I. Facts

In 1986, defendant Sweetheart Cup Company, then known as the Fort Howard Cup Company, began manufacture of certain disposable drink cups bearing a design of gray and white bands topped by a band carrying a repeating, burgundy, art-deco style "leaf." Defendant's logotype for this design is "Preference." Subsequent to defendant's commencing manufacture of the Preference cup, plaintiff Letica Corporation began manufacturing certain disposable drink cups bearing a design of gray and white bands topped by a band carrying a repeating pattern of burgundy and gray, art-deco style "whales' tails." Plaintiff's logotype for this design is "Maui."

On August 5, 1991, defendant sent a letter to plaintiff informing plaintiff that defendant had recently become aware of the existence of the Maui cup. Defendant charged that plaintiff's Maui cup was infringing upon the statutory and common law trade dress rights that defendant claimed to hold in the Preference cup and demanded that plaintiff immediately cease the manufacture and sale of its Maui cup. Defendant threatened to pursue legal action if plaintiff did not accede to defendant's demands.

In response to the threatened litigation, plaintiff initiated the instant action seeking declaratory judgment and alleging unfair competition and antitrust violations on the part of defendant. In an order dated April 30, 1992, this court, acting upon a motion by defendant, dismissed plaintiff's claims of unfair competition and antitrust violations for failure to state a claim upon which relief could be granted. 790 F.Supp. 702.

In its counterclaim, defendant sets forth three claims: 1) violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125, for false designation of origin and false description or representation, 2) common law trade dress infringement, and 3) common law unfair competition. Plaintiff moves for summary declaratory judgment on the issue raised in its first amended complaint of whether plaintiff's Maui cup design infringes upon defendant's Preference trade dress.[1]

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the

---

**1.** Because defendant's counterclaims raise the same legal and factual issues as plaintiff's request for declaratory judgment, plaintiff's motion shall be considered as a motion for summary judgment on the defendant's counterclaims as well as a motion for summary declaratory judgment on plaintiff's claim that its Maui cup design does not infringe upon defendant's Preference trade dress design.

burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### III. Analysis

■ The primary issue in this case is whether plaintiff's Maui cup trade dress, which came into usage subsequent to defendant's usage of the Preference trade dress, violates defendant's common law or statutory trade dress rights in the Preference design. To establish a common law trade dress claim or a statutory trade dress claim under section 43(a) of the Lanham Act for false designation of origin and false description or representation, a complainant, in this case the defendant, must prove 1) that the trade dress is so confusingly similar as to cause a likelihood of confusion, 2) that the appropriated features of the trade dress are primarily nonfunctional, and 3) that the trade dress has obtained a secondary meaning. *Kwik–Site Corp. v. Clear View Mfg. Co., Inc.,* 758 F.2d 167, 178 (6th Cir.1985).

■ Whether the products are confusing similarly is the primary issue in a claim of trademark violation. Therefore, analysis of such a claim necessarily involves a careful comparison of the product claimed to be infringed with the product claimed to be infringing to determine similarity. *Mihalek Corp. v. State of Michigan,* 814 F.2d 290, 296 (6th Cir.1987). In this kind of controversy, summary judgment may be appropriate if reasonable minds could not differ as to the absence of substantial similarity. *Id.; see also Warner Bros. v. Amer. Broadcasting Companies,* 720 F.2d 231, 246 (2d Cir.1983) (though the likelihood of confusion is frequently a fairly disputed issue of fact on which reasonable minds could differ, the issue is amenable to summary judgment in appropriate cases). If no substantial similarity is found, the claim must fail. *Mihalek,* 814 F.2d at 296.

■ After making a visual comparison of the two trade dress designs at issue in this case, the court finds that there can be no genuine issue of material fact as to the similarity of the two designs. The geometric design of defendant's Preference cup is very different from the geometric design of plaintiff's Maui cup. The bottom half of the Sweetheart cup is a solid color: a light brownish-gray. Just above this solid-colored, bottom half of the cup is a small band of the same brownish-gray color approximately four-tenths of an inch in thickness. Another four-tenths of an inch above this

smaller gray band is a burgundy band approximately one-tenth of an inch in thickness. Rising out of this thin burgundy band is an art-deco style double-leaf pattern that appears recurrently around the circumference of the cup.

The geometric design of plaintiff's Maui cup consists of bluish-gray bands of color that begin at the bottom of the cup and gradually decrease in thickness as the color progresses upward on the cup. The bluish-gray color covers approximately two-thirds of the cup whereas the brownish-gray color on the Preference cup covers only one-half of the Preference cup. At the top of the bluish-gray color portion of the Maui cup is a recurring contemporary pattern which is positioned half in the bluish gray color and half in the white top portion of the cup. This contemporary pattern is said by plaintiff Letica to resemble "whales' tails." The "whales' tails" are shapes resembling tear drops except that the thinner extended part of the whales' tail "tear" bends at an angle from the rounded part of the tear rather than extending perpendicularly from it as in a traditional tear shape.

In addition to the difference in the geometric pattern, the court notes that there is an obvious difference between the colors used on the Preference cup and the colors used on the Maui cup. Though both sets of colors could be called burgundy and gray, the Maui cup gray has a bluish tint to it whereas the Preference cup has a brownish tint to it. The burgundy color in the Preference design is almost red whereas the burgundy in the Maui design is almost purple.

The overall impression given by each cup is different. The differences in geometric design and the differences in color are such that the two cups do not in any way strike the eye as being substantially similar. Thus, defendant's counterclaims of trade dress infringement must be dismissed, and plaintiff's motion for summary declaratory judgment granted.

Plaintiff does not argue as it might have, that plaintiff is entitled to summary judgment on the basis of a visual comparison of the plaintiff's and defendant's respective designs. Nevertheless, the court finds, *sua sponte*, that in visually comparing defendant's Sweetheart trade dress design with plaintiff's Maui design, there can be no genuine issue of material fact as to whether there exists a likelihood of confusion as to the origin of the products.

■ Thus, because defendant's trade dress infringement claims under the common law and under the Lanham Act fail on the first and necessary element of substantial similarity, plaintiff is entitled to summary judgment on the trade dress claims.[2] Plaintiff therefore is also entitled to summary declaratory judgment on the issue of whether plaintiff's Maui cup design infringes upon defendant's Preference trade dress. Furthermore, because defendant's common law claim of unfair competition is based upon defendant's trade dress infringement claims, plaintiff is entitled to summary judgment and summary declaratory judgment on this claim as well.[3]

In its motion for summary declaratory judgment, plaintiff sets forth five arguments: 1) that defendant has abandoned its trade dress rights by allowing the design in question to be simultaneously used by an allegedly unrelated company, 2) that defendant has failed to produce evidence of confusion or of secondary meaning, as the Patent and Trademark Office recognized,

2. Because a user of a trade dress which is similar to a previously existing trade dress can violate section 43(a) of the Lanham Act by falsely representing his goods as those of another, lack of substantial similarity is not a complete answer to a Lanham Act claim. *Warner*, 720 F.2d at 247. However, defendant makes no factual allegations that plaintiff has made any false representations.

3. Defendant suggested at oral argument that because plaintiff's motion for summary declarato-

ry judgment does not ask specifically for judgment on the issue of defendant's counterclaim of common law unfair competition, this issue necessarily will go to trial. The court disagrees. Defendant's counter-claim for unfair competition alleges that plaintiff has engaged in unfair competition by infringing on the trade dress of defendant. Thus, a finding by the court that the trade dress claims are not meritorious must necessarily result in a finding that plaintiff has not engaged in unfair competition.

3) that there is no likelihood of confusion since both plaintiff and defendant put their names on their products, 4) that there is no evidence of actual confusion at the point of purchase and that, in any event, plaintiff does not participate at this point, and 5) that defendant's claims are really directed at the color scheme and not the design of plaintiff's product. In its response, defendant claims that all of plaintiff's legal and factual arguments fail and argues that therefore plaintiff's motion for summary judgment and for summary declaratory judgment should be denied.

■ Although the case has been decided upon a visual comparison, the court will address the merits of plaintiff's legal arguments. Plaintiff first alleges that defendant has abandoned its trade dress rights by allowing the design-in-suit to be used simultaneously by an unrelated company, namely Fort Howard Corporation. In response, defendant claims that defendant and Fort Howard Corporation have an oral license agreement allowing Fort Howard to use defendant's trade dress and that defendant maintains control over the quality of any products carrying defendant's Preference trade dress. Defendant argues that therefore it cannot be said to have abandoned its trade dress rights. Defendant attaches the affidavit of Harry Geair, vice president, general counsel and secretary of defendant, stating facts that tend to prove the factual claims of defendant.

■ Under section 5 of the Lanham Act, if two companies are related, use by one company of the other's trade dress rights does not constitute abandonment. 15 U.S.C. § 1055. A related company is any company which is controlled by the trademark owner as to the quality of the goods sold under the trademark. *Id.* Two companies using a common trade design do not have to be under common ownership to be related. Where a valid license is found to exist, the licensee is a related company. *Visa, U.S.A., Inc. v. Birmingham Trust Nat. Bank,* 696 F.2d 1371, 1377 n. 4 (Fed. Cir.1982); 1 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 18:16B at 837. The license agreement may be

oral. *Council of Better Business Bureaus, Inc. v. Better Business Bureau, Inc.,* 200 U.S.P.Q. 282, 289 (S.D.Fla.1978); *John Anthony, Inc. v. Fashions by John Anthony, Inc.,* 209 U.S.P.Q. 517, 519 (T.T.A.B.1980); 1 *McCarthy,* § 18:14B at 831. The defendant alleges sufficient facts from which a trier of fact could conclude that defendant and Fort Howard are related companies. Thus, there exists a genuine issue of material fact as to whether or not defendant has abandoned its trade dress rights.

Plaintiff's second argument in support of its motion for summary declaratory judgment is that defendant has failed to produce evidence of actual confusion between plaintiff's and defendant's products and has failed to produce evidence that defendant's design has acquired secondary meaning, as the Patent and Trademark Office recognized. Likelihood of confusion, rather than actual confusion, is the test for trademark infringement cases. *Roto-Rooter Corp. v. O'Neal,* 513 F.2d 44, 45 (5th Cir.1975). This issue, however, has been decided by the court by virtue of the court's finding on the element of substantial similarity. Because the court has determined that there is no substantial similarity between the plaintiff's and defendant's products, a finding that there is no likelihood of confusion must logically follow. *See Warner,* 720 F.2d at 246 (absence of substantial similarity leaves little basis for asserting that there is a likelihood of confusion).

■ As to the issue of secondary meaning, the rule is that in an action brought under 15 U.S.C. § 1125(a) for false designation of origin, a complainant, in this case the defendant, need not prove that its product has acquired secondary meaning if it can prove that its product is inherently distinctive. *Two Pesos, Inc. v. Taco Cabana, Inc.,* — U.S. —, —, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615, 624 (1992). If a mark is arbitrary or fanciful, it is deemed inherently distinctive. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 11 (2d Cir.1976). From a visual inspection of the defendant's trade dress, the

court finds that defendant's trade dress is sufficiently fanciful to present a genuine issue as to whether defendant's design is inherently distinctive.

Plaintiff points out that in denying defendant's application for registration of its Preference trade dress on the principal register, the Patent and Trademark Office specifically found that defendant had failed to establish that its trade dress design has secondary meaning, that is, that the trade dress design has become so well recognized by consumers that it signals to consumers a single source.[4] An administrative decision of the trademark board may be persuasive but it is not binding on the court. *Whopper–Burger, Inc. v. Burger King Corp.*, 171 U.S.P.Q. 805, 807 (T.M.T.App.Bd.1971). Rights in trade mark or trade dress are acquired through use, not registration. *Volkswagenwerk A.G. v. Wheeler*, 814 F.2d 812, 819 (1st Cir.1987). Thus, the status of defendant's application for trademark registration with the Patent and Trademark Office is not dispositive of any issue in this case.

Plaintiff's third argument is that there is no likelihood of confusion since both plaintiff and defendant put their names on their products. When determining whether likelihood of confusion exists, a *prominent* disclosure of the manufacturer's or trader's name on the container, package, wrapper or label would be dispositive. *Kwik–Site*, 758 F.2d at 178. Plaintiff's supplement to exhibit D is a bag containing samples of the accused cup. On the underside of the cup in very small, though legible type is printed "MAUI CUP DIV. LETICA CORP. 12 PECM 33006." Because plaintiff's labelling is not prominently placed but rather in small type and obscurely placed as to likely be unnoticed by a consumer, the manufacturer's label in this case cannot be dispositive. Defendant's name also appears on its Preference cup, but again the size and placement of the labelling does not constitute prominence. Thus, there exists a genuine issue of material fact as to whether a consumer would be informed of the source of plaintiff's product by means of such labelling.

Plaintiff's fourth argument is twofold: 1) that there is no evidence of actual confusion at the point of purchase, and 2) that in any event, plaintiff does not participate at this point. Plaintiff argues that therefore plaintiff cannot be held liable for any post-sale confusion. As discussed *supra*, no evidence of actual confusion is required. Furthermore, under the Lanham Act, post-sale confusion is a cognizable injury. *Artus Corp. v. Nordic Co.*, 512 F.Supp. 1184, 1191 (W.D.Penn.1981). A manufacturer who produces a product bearing a trade dress confusingly similar to a complaining witness' trade dress is liable for placing in the hands of a retailer or wholesaler an instrument of consumer deception. *Scotch Whiskey Ass'n v. Barton Distilling Co.*, 338 F.Supp. 595, 599 (N.D.Ill.1971); *Corning Glass Works v. Jeanette Glass Co.*, 308 F.Supp. 1321, 1326 (S.D.N.Y.1970). Furthermore, a manufacturer who in some manner aids or encourages its distributors to infringe upon another's trademark is liable for any confusion caused. *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 853–54, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982); *McCarthy*, § 25:2A at 240–42. Thus, if confusion were found to be likely, plaintiff might be held liable for confusion at any and all stages of distribution.

Plaintiff's fifth and final argument is that defendant's claims are really directed at the color scheme and not the design of plaintiff's product. Plaintiff supports this allegation by pointing out that defendant has acknowledged that another of plaintiff's products that has the same geometric configuration as the accused cup but is printed in red and blue instead of burgundy and gray does not infringe upon defendant's trade dress. Thus, plaintiff concludes that it is merely the burgundy and gray color scheme to which defendant objects and not the geometric design.

---

**4.** Plaintiff twice has filed for registration of the Preference trade dress. Both applications were denied. Defendant currently is appealing the denial of the second application.

While the combination of two colors by itself may not be distinctive, a color combination used in conjunction with a particular geometric pattern can be a valid trademark. *Southwestern Bell Tel. Co. v. Nationwide Indep. Directory Serv., Inc.,* 371 F.Supp. 900, 911 (W.D.Ark.1974). Thus, had the court not found the two designs to be so dissimilar, there could have been a genuine issue of material fact as to whether plaintiff's use of an identical color scheme *in conjunction* with the use of a similar geometric design infringes upon defendant's trade dress.

Because a visual comparison of the plaintiff's and defendant's products reveals to the court that there is no substantial similarity in the trade dress designs which could create a likelihood of confusion, the court finds that, despite the weakness and general failure of plaintiff's legal and factual arguments, plaintiff is entitled to summary declaratory judgment. Because the issues underlying defendant's counterclaims are essentially the same as those underlying plaintiff's request for declaratory judgment, defendant's counterclaims will be dismissed on the merits.

### ORDER

Therefore, it is hereby ORDERED that plaintiff's motion for summary declaratory judgment is GRANTED.

It is further ORDERED that defendant's counterclaims are DISMISSED on the merits.

SO ORDERED.