# United States Court of Appeals for the Federal Circuit

---

**IN RE: FORNEY INDUSTRIES, INC.,**
*Appellant*

---

2019-1073

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 86/269,096.

---

Decided: April 8, 2020

---

WILLIAM W. COCHRAN, II, Cochran Freund & Young, LLC, Fort Collins, CO, argued for appellant. Also represented by JAMES R. YOUNG.

MARY BETH WALKER, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Andrei Iancu. Also represented by THOMAS L. CASAGRANDE, CHRISTINA J. HIEBER, THOMAS W. KRAUSE, JOSEPH MATAL.

---

Before DYK, O'MALLEY, and CHEN, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Forney Industries, Inc. ("Forney") appeals from a decision of the Trademark Trial and Appeal Board ("the Board") which affirmed the trademark examining

attorney's refusal to register Forney's proposed mark on grounds that the proposed mark is of a type that can never be inherently distinctive. *In Re Forney Indus., Inc.*, 2018 WL 4348337 (T.T.A.B. Sept. 10, 2018) ("*Board Op.*"). Because the Board erred by holding that: (1) a multi-color mark can never be inherently distinctive, and (2) product packaging marks that employ color cannot be inherently distinctive in the absence of a well-defined peripheral shape or border, we vacate and remand for further proceedings.

## I. BACKGROUND

Forney sells accessories and tools for welding and machining in packaging that displays its proposed mark, shown below:



On May 1, 2014, Forney filed Trademark Application No. 86/269,096 for its proposed mark for packaging for various welding and machining goods based on use in commerce under Section 1(a) of the Lanham Act, 15 U.S.C. § 1051(a). Forney sought to register the mark without showing acquired distinctiveness. In its application, Forney identified its mark as a "color mark" and, as to the colors claimed, noted that "[t]he colors black, yellow and red is/are claimed as a feature of the mark." Joint Appendix ("J.A.") 23. Forney described its mark as follows: "[t]he mark consists of a solid black stripe at the top. Below the solid black stripe is the color yellow which fades into the color red. These colors are located on the packaging and or labels." *Id.*

In an Office Action dated September 16, 2014, the examining attorney refused registration under Sections 1, 2, and 45 of the Lanham Act because the mark "is not inherently distinctive." *Id.* at 39. The examining attorney noted that "[s]uch marks are registrable only on the Supplemental Register or on the Principal Register with sufficient proof of acquired distinctiveness." *Id.* The examining attorney requested, *inter alia*, a revised drawing depicting a single three-dimensional view of the goods or packaging showing those features that Forney claimed as its mark, and a revised color claim and mark description. *Id.* at 40–41. The Office Action also noted that the colors in Forney's submitted drawing differ from those in the color claim and mark description, noting that Forney's submitted drawing shows the color orange but the description omits reference to that color. *Id.* at 41.

In response, Forney revised the mark description as follows: "The mark consists of the colors red into yellow with a black banner located near the top as applied to packaging for the goods. The dotted lines merely depict placement of the mark on the packing backer card." J.A. 66. On May 14, 2015, the examining attorney again refused to register Forney's proposed trademark, stating that the mark was not inherently distinctive, and should be registrable only on the Supplemental Register, or, on the Principal Register with sufficient proof of acquired distinctiveness. *Id.* at 75.

Forney appealed this decision to the Board, arguing that its proposed mark should be treated as product packaging claiming multiple colors. *Board Op.* at *2. According to Forney, its proposed mark is "product packaging trade dress that may be inherently distinctive and, therefore, registrable without proof of acquired distinctiveness." *Id.*

The Board affirmed the examining attorney's refusal to register, treating the proposed mark as a color mark consisting of multiple colors applied to product packaging.

Relying on the Supreme Court's decisions in *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992), *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159 (1995), and *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205 (2000), the Board found that, when assessing marks consisting of color, there is no distinction between colors applied to products and colors applied to product packaging. *Board Op.* at *3. The Board acknowledged that, under *Two Pesos*, trade dress can be inherently distinctive, although the decision "is silent" on how to determine inherent distinctiveness of trade dress. *Id.* at *4. Further, the Board acknowledged that, under *Qualitex*, color applied to a product may serve as a trademark upon a showing of acquired distinctiveness. *Id.* According to the Board, *Wal-Mart* "clarifies that, while certain types of product packaging may be inherently distinctive source indicators, a color mark, that is a mark consisting of color—whether applied to a product or its packaging—is not among them." *Id.* at *5. The Board concluded that "*Wal-Mart* and *Qualitex* together make clear that 'a particular color on a product or its packaging' . . . can never be inherently distinctive and may only be registered on a showing of acquired distinctiveness." *Id.* (citing *Wal-Mart*, 529 U.S. at 212).

Turning to Forney's mark, the Board found "no legal distinction between a mark consisting of a single color and one, such as [Forney's], consisting of multiple colors without additional elements, e.g., shapes or designs." *Id.* at *6. According to the Board, Forney had not "attempted to combine its color mark with a uniform shape, pattern, or other distinctive design." *Id.* Contradicting its earlier finding that "a color mark consisting of multiple colors applied to product packaging *is not capable of* being inherently distinctive," the Board then held that a color mark consisting of color applied to product packaging cannot be inherently distinctive in the absence of an association with a well-defined peripheral shape or border. *Id.* at *3, *6 (citing *Forney Indus., Inc. v. Daco of Missouri, Inc.*, 835 F.3d 1238,

1250 (10th Cir. 2016)). Apparently applying that standard, the Board found Forney's mark not inherently distinctive. *Id.* Forney timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B) and 15 U.S.C. § 1071(a)(1).

We address in turn both of the Board's findings: (1) that a color mark can never be inherently distinctive in the trade dress context and (2) that, even if a color mark could be inherently distinctive, it cannot be absent a well-defined peripheral shape or border. *Board Op.* at *6.

## II. DISCUSSION

We review the TTAB's legal conclusions *de novo* and its findings of fact for substantial evidence. *Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965, 971 (Fed. Cir. 2018). "The issue of inherent distinctiveness is a factual determination made by the [B]oard." *Hoover Co. v. Royal Appliance Mfg. Co.*, 238 F.3d 1357, 1359 (Fed. Cir. 2001). The correct standard to apply in determining inherent distinctiveness, however, is a legal question, which we review *de novo. In re Chippendales USA, Inc.*, 622 F.3d 1346, 1350 (Fed. Cir. 2010).

### A.

A trademark includes "any word, name, symbol, or device, or any combination thereof" used by any person "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods[.]" 15 U.S.C. § 1127. Trade dress constitutes a "symbol" or "device" by which the goods of the applicant may be distinguished from the goods of others. *Wal-Mart*, 529 U.S. at 210–11. Trade dress "involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1578 (Fed. Cir. 1995) (internal quotations and citation omitted). Trade dress is registrable as a trademark if it serves the

same source-identifying function as a trademark. Marks are entitled to protection if they are inherently distinctive, i.e., "their intrinsic nature serves to identify a particular source of a product." *Two Pesos*, 505 U.S. at 768. Thus, a product's trade dress is protectable upon a showing of inherent distinctiveness. And if not inherently distinctive, marks may be protectable if they acquire distinctiveness, i.e., if they "become distinctive of the applicant's goods in commerce." 15 U.S.C. § 1052(e), (f).[1]

We find that the Board erred in two ways: (1) by concluding that a color-based trade dress mark can never be inherently distinctive without differentiating between product design and product packaging marks; and (2) by concluding (presumably in the alternative) that product packaging marks that employ color cannot be inherently distinctive in the absence of an association with a well-defined peripheral shape or border.

On the first point, the Board found, and the PTO contends, that Supreme Court case law, "make[s] clear that color, whether used on a product or its packaging, can never be inherently distinctive." Appellee's Br. 11. We disagree. We do not believe that, to date, the Supreme Court has gone as far as the Board did here, where the mark is proposed for product packaging, as distinct from product design.

For the reasons explained below, we hold that color marks can be inherently distinctive when used on product packaging, depending upon the character of the color design. As the Supreme Court has made clear, inherent distinctiveness turns on whether consumers would be predisposed to "equate the [color] feature with the source." *Wal-Mart*, 529 U.S. at 211. While it is true that "color is

---

[1]    Acquired distinctiveness is commonly referred to as "secondary meaning."

usually perceived as ornamentation," *In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 1124 (Fed. Cir. 1985), a distinct color-based product packaging mark can indicate the source of the goods to a consumer, and, therefore, can be inherently distinctive.

B.

Neither the Supreme Court, nor this court, has directly addressed whether a multi-color mark applied to product packaging can be inherently distinctive. The Supreme Court has, however, provided several data points on inherent distinctiveness of trade dress that inform our inquiry. In *Two Pesos*, the Supreme Court held that inherently distinctive trade dress is entitled to protection without a showing of secondary meaning. 505 U.S. at 776. The trade dress at issue in that case comprised:

> a festive eating atmosphere having interior dining and patio areas decorated with artifacts, bright colors, paintings and murals. The patio includes interior and exterior areas with the interior patio capable of being sealed off from the outside patio by overhead garage doors. The stepped exterior of the building is a festive and vivid color scheme using top border paint and neon stripes.

*Id.* at 765. Notably, the question of whether the particular trade dress in that case was inherently distinctive was not before the Court. The Court "assume[d], without deciding" that the trade dress was inherently distinctive. *Id.* at 770. Thus, *Two Pesos* stands merely for the proposition that trade dress *can be* inherently distinctive.

Subsequently, in *Qualitex*, the Court considered whether a single "special shade of green-gold color" on a dry-cleaning pad was protectable trade dress. 514 U.S. at 161. The Court held that "there is no rule absolutely barring the use of color alone" as a trade dress. *Id.* at 162. The Court found no "obvious theoretical objection to the use of

color alone as a trademark, where that color has attained 'secondary meaning' and therefore identifies and distinguishes a particular brand (and thus indicates its 'source')." *Id.* at 163.

Although *Qualitex* implied that a showing of acquired distinctiveness may be required before a trade dress mark based on color alone can be protectable, it did not expressly so hold. The Court returned to these issues in *Wal-Mart*. There, the Court differentiated between two types of proposed trade dress marks—product design and product packaging marks. In discussing a product design mark, the Court held that, "with respect to at least one category of mark—colors—we have held that no mark can ever be inherently distinctive." 529 U.S. at 211–212 (citing *Qualitex*, at 162–163). The Court went on to state that "design, like color, is not inherently distinctive." *Id.* at 212. In reaching this conclusion, the Court considered the fact that "product design almost invariably serves purposes other than source identification." *Id.* at 213. The Court also distinguished the respondent's trade dress at issue in that case (garment design) from the décor of a restaurant at issue in *Two Pesos*:

> [T]he decor of a restaurant, seems to us not to constitute product *design*. It was either product packaging—which, as we have discussed, normally *is* taken by the consumer to indicate origin—or else some *tertium quid* that is akin to product packaging and has no bearing on the present case.

*Id.* at 215. And, the Court noted, "[t]he attribution of inherent distinctiveness to certain categories of . . . product packaging derives from the fact that the very purpose of . . . encasing [a product] in a distinctive packaging, is most often to identify the source of the product." *Id.* at 212.

With these guideposts in mind, we turn to the issue at hand. We conclude that the Board erred in finding that a proposed product packaging mark consisting of multiple

colors is not capable of being inherently distinctive. *Board Op.* at \*4. As a source indicator, Forney's multi-color product packaging mark is more akin to the mark at issue in *Two Pesos* than those at issue in *Qualitex* and *Wal-mart*. Indeed, it falls firmly within the category of marks the Court described as potential source identifiers. Supreme Court precedent simply does not support the Board's conclusion that a product packaging mark based on color can never be inherently distinctive.

Indeed, we have addressed the implications of the key Supreme Court cases in this area before and held that "in *Wal-Mart*, the Court merely held that product design trade dress can never be inherently distinctive, and can only qualify for protection through acquired distinctiveness." *Chippendales*, 622 F.3d at 1357 (citing *Wal-mart*, 529 U.S. at 214–15). As we said there, "[n]othing in the *Wal–Mart* decision questioned or undermined" our established case law regarding the circumstances under which a proposed product packaging mark may be deemed inherently distinctive. *Id.* at 1358 (citing *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342 (C.C.P.A. 1977)).

We are not the only court to conclude that color marks on product packaging can be inherently distinctive. In considering a mark very similar to the one at issue here, the Tenth Circuit held that "the use of color in product packaging can be inherently distinctive (so that it is unnecessary to show secondary meaning)" in appropriate circumstances. *Forney Indus., Inc. v. Daco of Missouri, Inc.*, 835 F.3d 1238, 1248 (10th Cir. 2016).

Forney's proposed mark comprises the color red fading into yellow in a gradient, with a horizontal black bar at the end of the gradient. It is possible that such a mark can be perceived by consumers to suggest the source of the goods in that type of packaging. Accordingly, rather than blanketly holding that "[c]olors alone cannot be inherently distinctive," *Board Op.* at \*7, the Board should have

considered whether Forney's mark satisfies this court's criteria for inherent distinctiveness.

## C.

We now turn to the Board's alternative conclusion and assess whether it comports with our holding here and in our prior case law.  We conclude that it does not.  Without explaining why it was doing so, the Board found that a color may only be inherently distinctive when used in conjunction with a distinctive *peripheral* shape or border.

While the PTO attempts to now characterize the Board's test as less demanding (*see* Oral Arg. at 21:14–22:23), *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-1073.MP3), that effort is belied by the result the Board actually reached here.  The Board's judgment rests either on its erroneous view that color marks can *never* be inherently distinctive or on the erroneous requirement that a color mark must be associated with a specific *peripheral* shape or border in order to be inherently distinctive.  Nothing in the case law mandates such a rule.

In determining the inherent distinctiveness of trade dress, the question to be answered is whether the trade dress "makes such an impression on consumers that they will assume" the trade dress is associated with a particular source.  *Seabrook*, 568 F.2d at 1344.  To assess that question, the Board must look to the following factors: (1) whether the trade dress is a "common" basic shape or design; (2) whether it is unique or unusual in the particular field; (3) whether it is a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods; or, inapplicable here, (4) whether it is capable of creating a commercial impression distinct from the accompanying words.  *Id.* (collecting cases).  These factors are all different ways to determine whether it is reasonable to assume that customers in the

relevant market will perceive the trade dress as an indicator of origin.

Here, Forney is correct that its proposed mark is not just a "color mark," but also a "symbol." Appellant's Br. 22. Forney is not attempting to preempt the use of the colors red, yellow, and black, but instead seeks to protect only the particular combination of these colors, arranged in a particular design, as shown in the drawing submitted for its proposed mark. *See* Oral Arg. 8:03–8:09 ("[The Court:] And the . . . visual depiction of the mark governs rather than the verbal description, right? [Counsel for Appellant:] Yes."). The question the Board must answer is whether, as used on its product packaging, the combination of colors and the design those colors create are sufficiently indicative of the source of the goods contained in that packaging. And the Board must assess that question based on the overall impression created by both the colors employed and the pattern created by those colors. *See, e.g.*, *McNeil Nutritionals, LLC v. Heartland Sweeteners LLC*, 566 F. Supp. 2d 378, 390 (E.D. Pa. 2008) (court must look to overall combination of elements to determine whether the packaging identifies the products as originating with a known source); *Letica Corp. v. Sweetheart Cup Co.*, 805 F. Supp. 482, 489 (E.D. Mich. 1992) ("[w]hile the combination of two colors by itself may not be distinctive, a color combination used in conjunction with a particular geometric pattern can be a valid trademark."); *see also McCarthy on Trademarks and Unfair Competition* § 7:45 (5th ed.) (where color is confined to or creates a defined design, it can be inherently distinctive).

We conclude that the Board erred in stating that a multi-color product packaging mark can never be inherently distinctive. To the extent the Board's decision suggests that a multi-color mark must be associated with a specific peripheral shape in order to be inherently distinctive, that too, was error. Accordingly, we vacate and remand for the Board to consider, whether, for the uses

proposed, Forney's proposed mark is inherently distinctive under the *Seabrook* factors, considering the impression created by an overall view of the elements claimed.[2]

### III. CONCLUSION

For the reasons explained, we vacate the Board's decision and remand for proceedings consistent with this opinion.

**VACATED AND REMANDED**

COSTS

No costs.

---

[2]    We take no position on whether Forney's use of the mark in commerce, as shown by its submitted specimens, is consistent. As the parties themselves recognize, that issue is not before us, and is properly considered by the examining attorney in the first instance. *See* Oral Arg. at 4:22–5:25; *see also* Appellee's Br. 5 n.3.